# Reed's Appeal.

The preference to which miners are entitled under the Act of 2d April, 1849 for the protection of miners, mechanics, and labourers in certain counties, is not limited to the personal property at the mines, but extends to the personal estate generally of their employers.

APPEAL from the decree of the Common Pleas of *Schuylkill county.*

This was an appeal by Jacob Reed, jr., an execution creditor of Reed & Bixler, from the decree of the Court of Common Pleas of Schuylkill county, in the matter of the report of an auditor, appointed to ascertain and report the names of miners, laborers, and mechanics, with the amounts due to each respectively, claiming payment out of the proceeds of the sheriff's sale of the personal property of Reed & Bixler, on the *fi. fa.* of Jacob Reed, jr., *et al.;* as well as to ascertain and report the amount of rent due the landlords of the said Reed & Bixler, and what property was subject to the payment thereof. The *fi. fa.* was of September Term, 1850.

Reed & Bixler were engaged in the mining of coal at Lower Muddy Branch in Schuylkill county, on land of Dundas, and also on land of Dundas & Stroud. They also owned a store in the town of Llewellyn, about a mile and a quarter from the mines. The store was not kept exclusively for the use of the miners, but goods were sold also to others. Several horses used in carrying on the mines, were sold by the sheriff. They were removed to Llewellyn before the sheriff's levy.

The auditor reported the amount of claims of a number of miners, amounting in the agregate to $253.94. The amount claimed for rent of the mines, by Dundas & Stroud, up to the time of the levy, was $247.02. In addition, Reed & Bixler were to pay to De Haven ten cents per ton for all coal mined by them. There was claimed by De Haven $67. A landlords' warrant had been issued for the amount of rent claimed by Dundas & Stroud, and De Haven. It was in the hands of a constable. There was no property sold on the landlords' warrant; all was sold by the sheriff, to whom the constable gave notice of the claims for rent.

The amount of sale of store goods at Llewellyn was    $828.94
Proceeds of sale of horses and wagon, sold at
    Llewellyn, but belonging to the mines,        215.75
Amount of sale of property *sold at the mines*,    73.73

                                          $289.48

It was claimed for the landlords, as there was not a sufficient sum raised by the sale of the property *at the mines* to pay the claims of the miners, mechanics, and laborers, and *also* the claims

[Reed's Appeal.]

for *rent*, that the proceeds of the sale of the property at the mines was distributable *pro rata* to *both classes of claimants*.

It was further contended that the said proceeds not being sufficient to pay both classes of claimants, the proceeds of the store at Llewellyn ought to be applied to pay deficiencies in the *rent* claims. The auditor decided that as the store was not situate on the mining premises, and as the landlords had no right to distrain on the store goods *for the rent of the mines*, the fund realized by the sale of the store goods should not be applied to the said claims for rent.

He reported in favor of the payment, out of the sum of $289.48, of the claim of the miners in full; and the balance of $35.54, he applied towards the payment, *pro rata*, of the claims for *rent* of the mines. He also reported in favor of the payment of the nett proceeds of sale of *the store goods* to the execution creditors.

Exceptions were filed to his report.

KIDDER, J., expressed the opinion that the intention of the legislature was to give a preference to miners, laborers, and mechanics, over every other creditor. He observed that in carrying out this construction, the only difficulty was where property subject to a landlords' warrant, is levied upon by an execution creditor in connection with property not upon the premises and not subject to such warrant. "The landlord having the first lien upon the property upon the premises demised, it is contended that it would be inequitable to permit the proceeds of the sale of such property to be swept away to pay miners and laborers, &c.; but as other property, not upon the premises, was sold, they should be paid out of the proceeds of such sale, leaving the proceeds of the sale of the property upon the premises *to the landlord*. This view of the case is urged upon the principle, that having two funds out of which to make their money, and the landlord having but one, equity would enjoin that the miners, laborers, &c., should be compelled to resort to the fund, which is not accessible to the landlord. * * * Miners, laborers, and mechanics having the preference, receive their pay out of the *entire proceeds of the sale*, and they are not called upon to elect or to discriminate the particular fund from which their claims are to be paid. They are to give notice to the officer executing the writ, and 'such officer shall pay to such miners, mechanics, and laborers, out of the *proceeds* of the sale, the amount each is justly and legally entitled to receive, not exceeding fifty dollars, in like manner as rents are now payable.' This evidently contemplates that the *proceeds* of the sale upon the execution, shall be a common fund, out of which the preferred class shall first be paid, and the balance is distributable according to law."

It was assigned for error: That the Court erred in their decree, inasmuch as they awarded to miners, laborers, and mechanics, the full amount of their respective claims out of the joint fund raised by the sale of all the personal property of said defendants, to take precedence over execution creditors; and because they refused to confine said miners, laborers, and mechanics to the fund raised by the sale of the property *at the mines*, and did not decree the fund raised by the sale of the store and other property, *to the execution creditors.*

*Campbell* and *Cummings*, for appellant.

*Bannan*, for appellee.

The opinion of the Court was delivered, May 17, by

Lewis, J.—This is an appeal by Jacob Reed, the plaintiff, in an execution on which the goods of John B. Reed and Moses Bixler were sold, and the proceeds brought into Court for distribution. The defendants in the execution were engaged in the mining business at Lower Muddy Branch, and also in storekeeping, at the town of Llewellyn; and the money in Court was the proceeds of the store goods, and of the property at the mines. The Act of 2d April, 1849, which is confined to Schuylkill and other counties therein named, gives a preference to miners, laborers, and mechanics, employed in and about the business of mining coal, &c., for the purpose of securing their wages, not exceeding fifty dollars each; and the question is whether their liens are restricted to the property at the mines, or extend to the personal estate generally of their employers. There is nothing in the language of the Act which limits their liens to the property at the mines. That property, in cases of insolvency, is usually insufficient for the payment of the claims of the miners, mechanics, and laborers. It consists of cars, mules, mining tools, and machinery employed in preparing the coal for market. It is as frequently a part of the capital of the operator at his entrance into the business, as it is the product of the labor of those who engage in his service afterwards. So that the latter have no peculiar equity against this portion of their debtor's estate arising from the presumption that it is the result of their own labor. On the contrary, if the equity of their claims is to be placed upon that footing, it is quite as strong against the store goods of their employers as against any other portion of their estate. The coal, raised from the bowels of the earth, prepared for market, and sent thither for sale, derives its chief value from the labor of those intended to be protected by the statute. The money arising from this source is the fund upon which the operator chiefly relies for support, and for the increase of his estate. This is the fund which is usually employed

in the purchase of store goods, in cases where the employer thinks proper to establish a store.    And it is not material to inquire whether the store was established for the sole purpose of paying the laborers and mechanics in store goods at a profit, or for that purpose combined with the other usual advantages of trade.    The earnings of the laborers go to increase the general estate of their employer, and their claim is equally just against every portion of his goods.    The miner, industriously engaged in his subterranean employment, has but limited opportunities for ascertaining the circumstances of his employers, in time to adopt measures to secure his wages; and his poverty, and dependent condition, constrain him to continued exertion, and preclude the early and vigilant assertion of his claims by process of law, which other creditors may adopt without hazarding their means of subsistence.    The peculiar hardships and losses to which this meritorious class were constantly exposed, by the insolvency of their employers, at length attracted the attention of a power competent to furnish a remedy. That remedy has been provided by the statute of 1849, and it is the pleasure as well as the duty of the Courts to carry out, in good faith, its just and benevolent provisions.    The Court below was correct in refusing to restrict their claim to the property at the mines, and in directing them to be paid in full out of the general fund in Court.

Decree affirmed.